## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AMARI COATES,

           Plaintiff,

vs.

CITY OF DETROIT, CITY OF DETROIT OFFICERS,
OFFICER E. LLAMAS (2546), OFFICER M. RUIZ (1187),
OFFICER ANTHONY WILLIAMS (5098), OFFICER
HILL (1095) and CPL. DAVID GARCIA (738)
in their individual and official capacities,

           Defendants,

Case No. 2:22-cv-10378
Hon. Bernard A. Friedman
Mag. Judge Jonathan J.C. Grey

| | |
|---|---|
| ROMANO LAW, PLLC<br>DANIEL G. ROMANO (P49117)<br>GINA U. PUZZUOLI (P37792)<br>Attorneys for Plaintiff<br>23880 Woodward Avenue<br>Pleasant Ridge, MI 48069<br>(248) 750-0270/(248) 936-2105 (F)<br>dromano@romanolawpllc.com<br>kshea@romanolawpllc.com | SARAH V. DOMIN (P79128)<br>CITY OF DETROIT LAW<br>DEPARTMENT<br>Attorneys for Defendants<br>2 Woodward Avenue, Suite 500<br>Detroit, MI 48226<br>(313) 237-0535/(313) 224-5505 (F)<br>dominsa@detroitmi.gov |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**NOW COME** Defendants, City of Detroit, Eissac Llamas, Matthew Ruiz, Anthony Williams, Terrell Hill, and David Garcia, by and through their undersigned attorney, and for their Motion for Partial Summary Judgment, state the following:

1.    Plaintiff file this action on February 22, 2022. (ECF No. 1)

2.    In his Complaint, Plaintiff alleges violations of the Fourth Amendment

including excessive force and unreasonable search and seizure against the individual defendants, as well as a *Monell* claim for municipal liability against the City.

3.      Plaintiff also alleges state law tort claims of assault and battery, civil conspiracy, and false arrest and imprisonment against the individual Defendants.

4.      For the reasons stated in Defendants' brief below, the individual defendants are entitled to qualified immunity as to Plaintiff's constitutional claims and good-faith, common law immunity as to Plaintiff's state law tort claims.

5.      Additionally, for the reasons stated in the attached brief, Plaintiff has failed to establish an unconstitutional custom, policy, or practice to support his claim of municipal liability against the City of Detroit.

WHEREFORE, Defendants respectfully move this Honorable Court to grant their Motion and dismiss Plaintiff's claims in their entirety.

Respectfully submitted,

CITY OF DETROIT LAW DEPARTMENT

/s/Sarah V. Domin
SARAH V. DOMIN (P79128)
Attorney for Defendants
2 Woodward Avenue, Suite 500
Detroit, MI 48226
(313) 237-0535
(313) 224-5505 Fax
dominsa@detroitmi.gov

Date: March 28, 2023

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AMARI COATES,                                        Case No. 2:22-cv-10378
                                                     Hon. Bernard A. Friedman

    Plaintiff,                              Mag. Judge Jonathan J.C. Grey

vs.

CITY OF DETROIT, CITY OF DETROIT OFFICERS,
OFFICER E. LLAMAS (2546), OFFICER M. RUIZ (1187),
OFFICER ANTHONY WILLIAMS (5098), OFFICER
HILL (1095) and CPL. DAVID GARCIA (738)
in their individual and official capacities,

    Defendants,

---

| ROMANO LAW, PLLC | SARAH V. DOMIN (P79128) |
|---|---|
| DANIEL G. ROMANO (P49117) | CITY OF DETROIT LAW |
| GINA U. PUZZUOLI (P37792) | DEPARTMENT |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 23880 Woodward Avenue | 2 Woodward Avenue, Suite 500 |
| Pleasant Ridge, MI 48069 | Detroit, MI 48226 |
| (248) 750-0270/(248) 936-2105 (F) | (313) 237-0535/(313) 224-5505 (F) |
| dromano@romanolawpllc.com | dominsa@detroitmi.gov |
| kshea@romanolawpllc.com | |

---

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................. i

INDEX OF AUTHORITIES...................................................................... ii

STATEMENT OF ISSUES PRESENTED................................................1

FACTUAL SUMMARY .............................................................................2

STANDARD OF REVIEW .........................................................................4

LAW AND ARGUMENT ...........................................................................6

     i.     Individual Defendants are Entitled to Qualified Immunity as to Plaintiff's Fourth Amendment Claims ..................................................6

     ii.    Defendants Are Entitled to Good Faith Common Law Immunity for Plaintiff's State Law Intentional Tort Claims ....................................11

     iii.   Plaintiff Has Not Established Any Unconstitutional Custom, Policy, or Practice of the City of Detroit........................................................12

CONCLUSION ..........................................................................................14

## INDEX OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662;173 L. Ed. 2d 868 (2009)..................................................5

*Anderson v. Liberty Lobby, Inc,*
  477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986) .........................6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544; 167 L.Ed.2d 929 (2007)...............................................4, 5

*Campbell v. City of Springboro,*
  700 F.3d 779 (6th Cir. 2012) ...............................................................13

*Celotex Corporation v. Catrett,*
  477 U.S. 317 (1986)............................................................................5, 6

*City and County of San Francisco v. Sheehan,*
  575 U.S. ——, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015) ......................8

*City of Canton v. Harris,*
  498 U.S.  (1989)..................................................................................12

*City of Escondido v. Emmons,*
  586 U.S. __, 139 S.Ct. 500 (2019).........................................................7

*Collins v. Harker Heights,*
  503 U.S. 115 (1992)..............................................................................12

*Computer Leasco, Inc. v. Volvo White Truck Corporation,*
  820 F. Supp. 326 (E.D. Mich. 1993) ......................................................5

*Elliot Co., Inc. v. Caribbean Utilities Co., Ltd.,*
  513 F.2d 1176 (6th Cir. 1975) ................................................................4

*Gonzales v. Ysleta Independent School District,*
  996 F.2d 745 (5th Cir. 1993) ...............................................................13

*Graham v. Connor,*
  490 U.S. 386 (1989)..............................................................................10

*Gravelet–Blondin v. Shelton*,
    728 F.3d 1086 (9th Cir.2013) ..............................................................7, 8

*Greenen v. Romeo Village Police Department*,
    819 F. Supp. 658 (E.D. Mich. 1993) ......................................................5

*Jackson v. City of Cleveland*,
    925 F.3d 793 (Sixth Cir. 2019) .............................................................13

*Kisela v. Hughes*,
    584 U.S. __ (slip op., at 4), 138 S.Ct. 1148 (2018) ...............................7

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) .................................................................5

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).................................................................................6

*Monell v. Department of Social Services*,
    436 U.S.  (1978)................................................................................ 12, 13

*Odom v. Wayne County*
    482 Mich. ...............................................................................................11

*Oklahoma v. Tuttle*,
    471 U.S. 808 (1985).................................................................................12

*Ross v. Consumers Power Co. (On Rehearing)*,
    420 Mich. 567 (1984) ..............................................................................11

*U.S. v. Ellison*,
    462 F.3d 557 (6th Cir., 2006) .................................................................9

*Webster v. Houston*,
    735 F.2d 838 (5th Cir. 1984) .................................................................12

## <u>Statutes</u>

42 U.S.C. §1983 .......................................................................................7

MCL 691.1407(3) ....................................................................................11

## <u>Rules</u>

Fed. R. Civ. P. 8 ................................................................................................4

Fed. R. Civ. P. 12(b)(6) .....................................................................................4

Fed. R. Civ. P. 56(c) .................................................................................. 4, 5, 6

under Federal Rule of Civil Procedure ..........................................................6

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.   Did Plaintiff suffer any constitutional violation as a result of the individual defendants' conduct?

> **Defendant answers: "No."**
>
> **Plaintiffs answer: "Yes."**

2.   Are the individual defendants entitled to qualified immunity for Plaintiff's claims of constitutional violations?

> **Defendant answers: "Yes."**
>
> **Plaintiffs answer: "No."**

3.   Are the individual defendants entitled to good faith common law immunity for Plaintiff's claims of state law tort violations?

> **Defendant answers: "Yes."**
>
> **Plaintiffs answer: "No."**

4.   Has Plaintiff failed to establish an unconstitutional custom, policy or practice on the part of Defendant City of Detroit?

> **Defendant answers: "Yes."**
>
> **Plaintiffs answer: "No."**

## FACTUAL SUMMARY

This case arises out of the arrest of Plaintiff, Amari Coates, on September 22, 2020. Multiple body worn camera videos of the arrest are available (Exhibit A). Defendants Llamas and Ruiz effectuated the arrest, and Defendants Williams, Hill, and Garcia assisted. Plaintiff sues the individual defendants for unreasonable search and seizure, excessive force, and the state law tort claims of assault and battery, civil conspiracy, and false arrest and imprisonment. Defendant City of Detroit is also being sued under a *Monell* theory of municipal liability.

On the date of the incident, Defendants Llamas and Ruiz were on routine patrol in the City of Detroit's Sixth Precinct. While on patrol, the license plate reader in their vehicle alerted them to a black Ford Fusion that was uninsured. (See Police Reports, Exhibit B). They followed the vehicle into a CVS parking on at Evergreen and Warren and effectuated a traffic stop. The driver, later identified as Plaintiff, immediately got out of his vehicle and ignored the officers' commands to stay in the vehicle. He immediately became irate and started yelling at the officers. They gave him multiple verbal commands to remain in the vehicle, which he ignored, and he began approaching them in an aggressive manner. Defendants Ruiz and Llamas attempted to handcuff Plaintiff, but due to his strength they were unable to get a hold of his hands and called for backup.

Defendants Hill, Williams, and Garcia responded to the call for assistance and were able to assist Defendants Ruiz and Llamas in putting handcuffs on the Plaintiff. During the entire interaction, Plaintiff was actively using his body strength to avoid being handcuffed. At one point, the officers placed Plaintiff on the ground and were finally able to handcuff him. Plaintiff began yelling "I can't breathe" repeatedly, and as soon as they handcuffed him the officers lifted Plaintiff to his feet and sat him down in the back of a police SUV. They also called an ambulance for Plaintiff but he refused medical treatment. This is all seen in the video as well as being documented in the police reports. Plaintiff was then transported to the Detroit Detention Center.

Plaintiff testified that on the date of the incident, he was driving his girlfriend's car, which was a rental car. He testified that he was going to the CVS and did not realize he was being pulled over until the officers approached his vehicle. He did not recall being told to stay inside the car but did recall an officer telling him that they were conducting a traffic investigation. He testified that he was placed in a chokehold, his hand was stuck between his body and another car, and that one of the officers fell to the ground and pulled Plaintiff to the ground with him. He also testified that he was shouting "I can't breathe" due to feeling claustrophobic while he was on the ground. He testified that after being handcuffed, the vehicle was searched and he was taken to the Detroit Detention Center. When he got there, he

was not able to be booked in due to his hands being injured, so he was taken to the DMC and received medical attention before being brought back to the DDC. He was released without being charged with any criminal offense. (Plaintiff's Deposition, Exhibit C)

## <u>STANDARD OF REVIEW</u>

This motion is brought pursuant to Fed. R. Civ. P. 56(c) and Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. *Elliot Co., Inc. v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176 (6th Cir. 1975). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; 167 L.Ed.2d 929 (2007), the Court held that the pleading standard under Fed. R. Civ. P. 8 does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads

facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557, 127 S.Ct. 1955 (brackets omitted). *Ashcroft v. Iqbal*, 556 U.S. 662, 678;173 L. Ed. 2d 868 (2009) (citing to and quoting *Twombly*, 550 U.S. 544).

In other words, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

The court must view all the allegations in Plaintiff's complaint as true. *Greenen v. Romeo Village Police Department*, 819 F. Supp. 658 (E.D. Mich. 1993). Ultimately, the court's inquiry should be whether it appears beyond doubt that Plaintiff cannot set forth facts by and through which relief could be afforded. *Computer Leasco, Inc. v. Volvo White Truck Corporation*, 820 F. Supp. 326 (E.D. Mich. 1993).

With reference to Rule 56(c), it is significant that the issue raised in the motion goes to the plaintiff's case in chief rather than an affirmative defense and that the plaintiff accordingly bears the burden of proof on that issue. In *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986) the Supreme Court noted that:

> ... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party, who **fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at the trial.** In such a case there can be no 'genuine issue

as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.' [T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...' [cite omitted] 477 U.S. at 320 (Emphasis added).

Once the movant in a Rule 56(c) motion identifies the issue as to which it maintains there is no genuine issue of material fact, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The *Celotex* holding was followed and developed in *Lobby*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986), which was decided the same day as *Celotex*. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Court emphasized that not just any issue of fact is sufficient to avoid summary judgment. Rather, the issue must be both material and genuine. A fact issue is material only if "it might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. A fact issue is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

## LAW AND ARGUMENT

### i.    Individual Defendants are Entitled to Qualified Immunity as to

**Plaintiff's Fourth Amendment Claims**

For claims under 42 U.S.C. §1983, state actors are entitled to qualified immunity if the "official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. __, __ (slip op., at 4), 138 S.Ct. 1148 (2018). In overturning the denial of qualified immunity, the Supreme Court in *Kisela* stated that "this Court has repeatedly told courts . . . not to define clearly established law at a high level of generality." (*Kisela*, 584 U.S. at __,138 S.Ct. at 1152).

As recently as January 2019, the Supreme Court has held that the constitutional right at issue in a § 1983 claim must be clearly established and "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *City of Escondido v. Emmons*, 586 U.S. __, 139 S.Ct. 500 (2019) (quoting *Kisela*, *supra*). In the Escondido case, decided on January 7, 2019, the only claim before the Court was that the defendant police officers had used excessive force in effectuating an arrest. In overturning the ruling of the Ninth Circuit Court of Appeals, the court stated that:

> The Ninth Circuit's entire relevant analysis of the qualified immunity question consisted of the following: "The right to be free of excessive force was clearly established at the time of the events in question. *Gravelet–Blondin v. Shelton,* 728 F.3d 1086, 1093 (9th Cir.2013)." 716 Fed.Appx. 724, 726 (9th Cir. 2018).

> ***

> In this case, the Court of Appeals contravened those settled

7

principles. The Court of Appeals should have asked whether clearly established law prohibited the officers from stopping and taking down a man in these circumstances. Instead, the Court of Appeals defined the clearly established right at a high level of generality by saying only that the "right to be free of excessive force" was clearly established. With the right defined at that high level of generality, the Court of Appeals then denied qualified immunity to the officers and remanded the case for trial. 716 Fed. Appx., at 726.

Under our precedents, the Court of Appeals' formulation of the clearly established right was far too general. To be sure, the Court of Appeals cited the *Gravelet–Blondin* case from that Circuit, which described a right to be "free from the application of non-trivial force for engaging in mere passive resistance...." 728 F.3d, at 1093. Assuming without deciding that a court of appeals decision may constitute clearly established law for purposes of qualified immunity, see *City and County of San Francisco v. Sheehan,* 575 U.S. ——, ——, 135 S.Ct. 1765, 1776, 191 L.Ed.2d 856 (2015), the Ninth Circuit's *Gravelet–Blondin* case law involved police force against individuals engaged in *passive* resistance. The Court of Appeals made no effort to explain how that case law prohibited Officer Craig's actions in this case. That is a problem under our precedents:
"[W]e have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.... While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate.... Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.... But a body of relevant case law is usually necessary to clearly establish the answer...." *Wesby,* 583 U.S., at ——, 138 S.Ct., at 581 (internal quotation marks omitted). *Emmons, supra.*

These recent cases make clear the Court's requirement that a clearly established right be sufficiently specific for a reasonable officer to be aware of the

right that he is allegedly violating. Merely alleging that an officer performed an "unreasonable search and/or seizure," essentially a restatement of the Fourth Amendment, for example, is far too general to satisfy this requirement.

In this case, the Defendant Police Officer's conduct did not violate any clearly established rights of Plaintiff. The clearly established rights claimed by Plaintiff are the freedom from excessive force and the freedom from unreasonable searches and seizures, both guaranteed by the Fourth Amendment. Defendants do not dispute that these rights are clearly established. Rather, Defendants argue that they did not violate these rights during the encounter with Plaintiff.

While operating vehicles, citizens have no reasonable expectation of privacy regarding the information contained in a license plate. (*See, e.g.*, *U.S. v. Ellison*, 462 F.3d 557 (6th Cir., 2006)) Officers on patrol may look up license plate information any time, for any reason. Once the vehicle Plaintiff was driving came up as uninsured in the LEIN system, the officers had a probable cause to investigate.

Once the traffic stop was commenced, Plaintiff became aggressive and actively resisted being handcuffed and questioned, (See Videos, Exhibit A) which led to his arrest for resisting and obstructing the actions of a police officer. Had he remained in the vehicle and given them the rental and/or insurance information, the arrest likely would never have happened. Given the relative strength of the Plaintiff and the fact that it took five officers to place him in handcuffs, it is clear that the

9

force used to arrest him was reasonable in light of the circumstances, and was not excessive.

The test for whether the amount of force used to effectuate an arrest is excessive is determined based on a reasonableness standard. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396 (1989). According to Graham, the reasonableness standard is "not capable of precise definition or mechanical application ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. In this case, Plaintiff was actively resisting arrest, which is shown in the videos. The officers used an amount of force that was necessary to place him under arrest, which in this case involved an officer holding each of Plaintiff's arms while Plaintiff continued pulling his arms away from them, and eventually the Plaintiff and officers fell to the ground while Plaintiff struggled to avoid being handcuffed. Once Plaintiff was handcuffed, no further force was used against him. In light of all of the circumstances in this case, a reasonable amount of force was used to effectuate the arrest. Therefore, the Defendants did not

violate any clearly established right of Plaintiff and are entitled to qualified immunity on his constitutional claims.

### ii.   Defendants Are Entitled to Good Faith Common Law Immunity for Plaintiff's State Law Intentional Tort Claims

The Michigan Supreme Court in *Odom v. Wayne County* held "that MCL 691.1407(3) of the governmental tort liability act (GTLA), which explicitly maintains "the law of intentional torts as it existed before July 7, 1986," grants immunity to governmental employees from intentional-tort liability to the extent allowed by the common law before July 7, 1986. We therefore reaffirm and apply the test concerning intentional-tort immunity outlined in *Ross v. Consumers Power Co. (On Rehearing)* [420 Mich. 567 (1984)]." *Odom*, 482 Mich. at 461. Under the *Ross* test, governmental employees acting in the good faith performance of their duties enjoy qualified immunity for intentional torts. *Ross*, 420 Mich. at 633-34.

In this case, Defendants Llamas, Ruiz, Williams, Hill and Garcia were acting lawfully and in the good faith performance of their duties. They pulled Plaintiff over based on reasonable suspicion that he was driving without insurance. Once they approached his vehicle, Plaintiff became verbally aggressive and actively resisted being placed into handcuffs. As the video shows, the defendants used only as much force as necessary to place Plaintiff in handcuffs and investigate him. As soon as he was secured in handcuffs, Plaintiff was brought to a police car to sit down and medical attention was requested, which he refused. There is no evidence that the

11

defendants acted with bad faith or malice. As such, they are also entitled to governmental immunity on the intentional tort claims.

### iii.    Plaintiff Has Not Established Any Unconstitutional Custom, Policy, or Practice of the City of Detroit

Finally, no support has been developed in the course of discovery to support Plaintiff's claim of an unconstitutional policy, custom or practice on the part of the City of Detroit. Generally, a governmental agency such as the City of Detroit, may be held liable for the violation of an individual's constitutionally protected rights only when the agency, acting through the execution of its policies or practices directly inflicts the injury. *Monell v. Department of Social Services*, 436 U.S. 685 (1978). *See also Oklahoma v. Tuttle*, 471 U.S. 808 (1985); *City of Canton v. Harris*, 498 U.S. 378 (1989).

Asserting the mere existence of a policy alone, however, is insufficient to create liability. Such may be a *formally adopted policy*, or *an informally developed* custom, practice, or procedure. *Monell v. Dep't of Social Services*, supra; *see also Collins v. Harker Heights*, 503 U.S. 115 (1992). An act performed pursuant to a "custom" that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability only when the relevant practice is so widespread as to have the force of law. *Webster v. Houston*, 735 F.2d 838 (5th Cir. 1984). A plaintiff must also demonstrate the policy or practice was, in fact,

promulgated by policy making authority, it was unconstitutional on its face or in its application, and that it was the moving force behind Plaintiff's injuries. *Monell v. Dep't of Social Services*, supra; *Gonzales v. Ysleta Independent School District*, 996 F.2d 745 (5th Cir. 1993). In this case, no final policy maker was deposed and no factual support exists to support the claim that these individual defendants were acting pursuant to an unconstitutional policy, custom, or practice of the Detroit Police Department.

Plaintiff claims in his Complaint that the City failed to adequately train and/or supervise its police officers. In order to show that the City is liable under *Monell* based on a failure-to-train claim, Plaintiff "must establish that: 1) the City's training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the City's deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (Sixth Cir. 2019) A plaintiff may show deliberate indifference by showing either (1) "prior instances of unconstitutional conduct demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it" or (2) "evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Jackson*, 925 F.3d at 836 (quoting *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012)).

In this case, no prior instances of unconstitutional conduct have been demonstrated, so Plaintiff must show that in this instance, his constitutional rights were violated and that the City failed to train its employees to handle such situations, presenting an obvious potential for constitutional violations. First, as argued above, the Defendants did not violate Plaintiff's Fourth Amendment rights because the search and seizure was reasonable and the amount of force used was reasonable in light of the circumstances. However, even if a violation had occurred, there is no evidence of a failure to train with the obvious potential for such violations. The officers testified at their depositions regarding the training they received about running license plates. For example, Defendant Williams accurately described the "plain view" doctrine that applies to license plates based on the training he received from the Detroit Police Department (Williams Deposition, Exhibit D, pages 11-15). Discovery has not revealed any obvious lack of training on the part of Defendant City of Detroit that would lead to the deprivation of citizens' constitutional rights.

Based on the above reasoning, Plaintiff has failed to support his failure to train claim against the City of Detroit.

## **CONCLUSION**

The Defendants in this case had probable cause to investigate Plaintiff and effectuated a valid arrest due to his resistance at the scene. There is, therefore, not sufficient support for Plaintiff's constitutional or state law tort claims. Additionally,

14

there is not sufficient support for a *Monell* claim against the City of Detroit.

Therefore, Defendants respectfully request that this Honorable Court dismiss

Plaintiff's complaint in its entirety, with prejudice.

Respectfully submitted,

CITY OF DETROIT LAW DEPARTMENT

/s/Sarah V. Domin
SARAH V. DOMIN (P79128)
Attorney for Defendants
2 Woodward Avenue, Suite 500
Detroit, MI 48226
(313) 237-0535/(313) 224-5505 Fax
dominsa@detroitmi.gov

Date: March 28, 2023

## CERTIFICATE OF SERVICE

I, Sarah V. Domin, hereby certify that the foregoing instrument was electronically filed with the Clerk of the Court and served upon all parties and/or their counsel of record using the Court's CMF ECF electronic file and serve system.

/s/Sarah V. Domin
Sarah V. Domin

Dated: March 28, 2023