UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMARI COATES,

       Plaintiff,                            Civil Action No. 22-cv-10378
                                                    HON. BERNARD A. FRIEDMAN

vs.

CITY OF DETROIT, *et al.*

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.    Introduction

Plaintiff Amari Coates commenced this 42 U.S.C. § 1983 action against the City of Detroit and Detroit police officers Eissac Llamas, Matthew Ruiz, T. Hill, Anthony Williams, and Corporal David Garcia. The complaint alleges that the officers violated the Fourth Amendment, and committed various intentional torts, when they tackled him to the ground during a traffic stop and arrested him without probable cause.

Before the Court is the officers' motion for summary judgment. (ECF No. 19). Coates responded. (ECF No. 21). The officers did not file a reply. The Court will decide the motion without oral argument pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the motion is granted.

II.   Background

   A.   *Factual History*

At approximately 4:20 P.M. on September 22, 2020, Officers Ruiz and Llamas were driving northbound on Evergreen Road in their scout car. (ECF No. 21-4, PageID.343, Tr. 38:11-16; ECF No. 19-3, PageID.150, 153). They spotted a black 2019 Ford Fusion travelling southbound on Evergreen Road and turning east on West Warren Road. (ECF No. 21-4, PageID.343, Tr. 38:2-10; ECF No. 19-3, PageID.150, 153). Officer Llamas entered the vehicle's license plate number into the Law Enforcement Information Network ("LEIN"). (ECF No. 21-4, PageID.336, Tr. 9:22-10:5; ECF No. 19-3, PageID. 150, 153). The system indicated that the vehicle lacked insurance. (ECF No. 21-4, PageID.336, Tr. 9:17-19; PageID.339, Tr. 22:17-20; ECF No 19-3, PageID.150, 153). Officer Ruiz made a U-turn on Evergreen Road, followed the car into a nearby CVS pharmacy parking lot, and activated the scout car's emergency lights. (ECF No. 21-4, PageID.343, Tr. 40:4-7; ECF No. 19-3, PageID.153). The black Fusion pulled into a parking space located near the front of the store. (ECF No. 21-2, Video 0:54; ECF No. 19-3, PageID.153).

The officers exited the scout car. (ECF No. 21-2, Video 0:52-54; ECF No. 19-2, Video 0:52-54). Officer Ruiz approached the black Fusion's front driver side. (ECF No. 21-2, Video 0:55-1:01). Officer Llamas walked to the front passenger side. (ECF No. 19-2, Video 0:54-1:04). Coates opened the front driver side door

2

just as Officer Ruiz reached the front of the vehicle. (ECF No. 21-2, Video 0:58-59). Officer Ruiz directed Coates to remain inside the car (*Id.*, Video 1:00-02), he informed Coates that the vehicle was uninsured (*Id.*, Video 1:06-07), and said the officers were conducting a traffic stop. (*Id.*, Video 1:05).

Coates ignored the instruction. He instead exited the vehicle and stood within inches of Officer Ruiz's chest. *(Id.*, Video 1:07-11). The officer quickly secured Coates's arms with both his hands. (*Id.*, Video 1:10-13). Officer Llamas grabbed Coates's left arm and informed him that the officers were detaining him for their own safety during the investigation. (ECF No. 19-2, Video 1:22-23, 1:38-40). Officer Ruiz placed handcuffs on Coates's right wrist and told him to place his hands behind his back. (ECF No. 21-2, Video 1:57-2:01). Coates asked the officers repeatedly "what am I doing?" and refused to comply. (*Id.*, Video 1:58-2:11). He resisted the officers as they tried to pull his arms behind his back. (*Id.*). Body camera footage shows Officer Ruiz calling for backup over his radio (*Id.*, Video 2:08-10), followed by a minute-long struggle between the officers and Coates as they attempted to drag him to the ground, pin him to the hood of his car, and secure his hands. (*Id.*, Video 2:10-3:11).

Officers Williams and Hill arrived at the scene a minute later and pulled Coates by his legs to the ground. (*Id.*, Video 3:11-16). Although the body camera footage becomes obstructed at this point in the altercation, the officers can be heard

3

wrestling with Coates and ordering him to place his hands behind his back. (*Id.*, Video 3:17-42). Coates then began shouting "I can't breathe." (*Id.*, Video 3:43-4:02). The officers continued to direct him to place his hands behind his back and assured him that none of the officers were on top of him. (*Id.*, Video 3:48-54). The body camera footage resumes after 19 seconds with the officers pulling Coates off the ground, his hands restrained behind his back. (*Id.*, Video 3:43-4:02).

While Coates declined medical attention at first, officers later transported him to the hospital to receive treatment for a hand laceration. (ECF No. 19-4, PageID.173, Tr. 48:20-49:14; ECF No. 21-3, PageID.329). He claims to have permanent nerve damage in his left hand and permanent scarring to his wrists and knees. (ECF No. 19-4, PageID.176, Tr. 60:11-20).

### B. Procedural History

Coates filed this lawsuit against the City of Detroit and the officers. (ECF No. 1). The complaint asserts causes of action for unreasonable search and seizure (Count I), excessive force (Count II), failure to intervene (Count II), municipal liability against the City of Detroit (Count III), assault and battery (Count IV), civil rights conspiracy (Count V), and false arrest and false imprisonment (Count VI). (*Id.*, PageID.5-14, ¶¶ 19-63).

Coates stipulated to dismissing the municipal liability claim against the City of Detroit – the sole cause of action asserted against the City. (ECF No. 21,

PageID.228). The officers now move for summary judgment on the remaining claims. (ECF No. 19).

III. <u>Legal Standards</u>

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IV. <u>Analysis</u>

    *A.    Fourth Amendment Unreasonable Search and Seizure (Count I)*

Coates's cause of action for "unreasonable search and seizure" comprises three sub-claims: (1) that the officers stopped his vehicle without reasonable suspicion of criminal activity, (2) they arrested him for resisting a law enforcement officer without probable cause, and (3) they lacked probable cause to search him after the arrest. (ECF No. 1, PageID.5-6, ¶¶ 21-26).

    1.    The Traffic Stop

Ordinary traffic stops constitute a "seizure" under the Fourth Amendment to the United States Constitution. U.S. Const. amend. IV; *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Police officers "must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity" to make a traffic stop. *United*

5

*States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012); *see also Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004).

"Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). Information obtained from LEIN – for example, that a car lacks insurance – provides officers with sufficient probable cause to effectuate a traffic stop. *See United States v. Conley*, No. 21-1723, 2023 U.S. App. LEXIS 856, at *11-12 (6th Cir. Jan. 12, 2023); *see also Scott v. City of Port Huron*, No. 15-11773, 2017 U.S. Dist. LEXIS 30825, at *21 (E.D. Mich. Mar. 6, 2017) ("Arguably, if all that Peczeniuk had relied on was the LEIN, he could have reasonably believed that there was probable cause to arrest Scott."); *Shumate v. Cleveland*, No. 09-11545, 2010 U.S. Dist. LEXIS 71056, at *10 (E.D. Mich. Jul. 14, 2010) ("Officers are entitled to rely on warrants appearing in LEIN when making an arrest."); *Taggart v. Macomb Cnty.*, 587 F. Supp. 1080, 1081 (E.D. Mich. 1982) ("[A] LEIN check is an authoritative source upon which law enforcement officers may justifiably rely in making an arrest.").

Here, Officers Ruiz and Llamas passed Coates's vehicle on Evergreen Road. (ECF No. 21-4, PageID.343, Tr. 38:2-10; ECF No. 19-3, PageID.153). Officer

Llamas entered the vehicle's license plate number into the LEIN database.[1] (ECF No. 21-4, PageID.336, Tr. 9:22-10:5; ECF No. 19-3, PageID.153). And the system indicated that the car was uninsured. (ECF No. 21-4, PageID.336, Tr. 9:17-19; PageID.339, Tr. 22:17-20; ECF No 19-3, PageID.153). This information alone supplied the officers with probable cause to stop Coates's vehicle and require him to produce proof of insurance.[2]

2. The Arrest

The officers also lawfully arrested Coates for obstructing their traffic investigation and resisting their efforts to place him under arrest. In Michigan, "[a] peace officer, without a warrant, may arrest a person" when "[a] felony,

---

[1] Officer Llamas testified correctly that the Fourth Amendment does not require law enforcement officers to articulate a reasonable suspicion of criminal activity or probable cause to believe a crime has been committed before entering publicly visible license plate information into LEIN. (ECF No. 21-4, PageID.336, Tr. 10:13-25). This is because "a motorist has no reasonable expectation of privacy in the information contained on his license plate under the Fourth Amendment." *United States v. Ellison*, 462 F.3d 557, 561 (6th Cir. 2006); *Perkins-Moore v. City of Detroit*, No. 21-10929, 2023 U.S. Dist. LEXIS 104290, at *15 (E.D. Mich. Jun. 15, 2023) ("It is well-established that a police officer's check of a vehicle's license plate in a database such as the LEIN is not a Fourth Amendment search.").

[2] Although operating an uninsured motor vehicle is punishable in Michigan as a misdemeanor, Michigan Compiled Laws § 500.3102(2), and "reasonable suspicion of an ongoing misdemeanor is adequate justification" for initiating a traffic stop, *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008), the insurance information that Officer Llamas retrieved from LEIN satisfied the more stringent probable cause standard. *See Conley*, 2023 U.S. App. LEXIS 856, at *11-12 (holding that information retrieved from LEIN, showing the suspect lacked car insurance, furnished enough probable cause to execute a traffic stop).

7

misdemeanor, or ordinance violation is committed in the peace officer's presence." Mich. Comp. Laws § 764.15(1)(a).

Mich. Comp. Laws § 750.81d prohibits "an individual" from "assault[ing], batter[ing], wound[ing], resist[ing], obstruct[ing], oppos[ing], or endanger[ing]" a police officer "who the individual knows or has reason to know is performing his or her duties." The statute defines the word "obstruct" as "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." Mich. Comp. Laws § 750.81d(7)(a). To establish a prima facie violation, the defendant must (1) obstruct or resist a police officer, (2) know or should know that the individual being obstructed or resisted is a police officer, and (3) the officer must be acting "lawfully." *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 622 (6th Cir. 2021) (cleaned up); *see also People v. Quinn*, 305 Mich. App. 484, 491-92 (2014).

Body camera footage depicts Officer Ruiz approaching the front driver side of Coates's car. (ECF No. 21-2, Video 0:55-1:01). He immediately directed Coates to remain inside his vehicle, informed Coates that the vehicle was uninsured, and said he was conducting a traffic investigation. (*Id.*, Video 1:00-07). Coates exclaimed "what you mean [*sic*] no insurance, it's a rental car." (*Id.*, Video 1:07-09). He then exited the vehicle contrary to Officer Ruiz's directions, told the officer

8

"watch out bro," and approached within inches of the officer's chest. (*Id.*, Video 1:08-11).

Officer Ruiz responded by securing Coates's arms with both his hands and facing Coates's back to the car. (*Id.*, Video 1:11-15). Officer Llamas grabbed Coates's left arm and informed him that the officers were detaining him for their own safety. (ECF No. 19-2, Video 1:22-23, 1:38-40). Officer Ruiz placed handcuffs on Coates's right wrist and directed him to place his hands behind his back.[3] (*Id.*, Video 1:57-2:01).

As the officers attempted to pull Coates's arms behind his back, he tightened his arms at his sides. (*Id.*, Video 1:58-2:11). The officers scuffled with Coates and pushed him to the ground. (*Id.*, Video 2:11-36). After falling on top of one of the officers, they pulled Coates off the ground, pushed him back first onto the vehicle's hood, and leaned their bodies on his torso. (*Id.*, Video 2:36-3:03). Coates's hands remained free and raised in the air when Officers Williams and Hill ran to the scene.

---

[3] The officers did not run afoul of the Fourth Amendment when they attempted to handcuff Coates for their own safety because (1) he already ignored Officer Ruiz's initial instruction to stay inside his vehicle, (2) he approached the officer aggressively, and (3) the vehicle's interior – along with any possible weapons therein – remained accessible to Coates since the front driver side door was ajar. *See United States v. Foster*, 376 F.3d 577, 587-88 (6th Cir. 2004) (deciding that handcuffing a suspect during a traffic stop was reasonable given the potential threat to the investigating officer's safety); *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999) (holding that "the use of handcuffs [does not] exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution.").

(*Id.*, Video 3:11-16). They pulled Coates to the ground by his legs, all four officers turned Coates onto his stomach, and they instructed Coates to place his hands behind his back repeatedly. (*Id.*, Video 3:17-42).

Even though the body camera footage becomes obscured as the officers wrestled with Coates on the ground, they can be heard continuing to direct Coates to place his hands behind his back. (*Id.*, Video 3:17-4:02). When the video footage resumes, the officers are seen pulling Coates off the ground as his hands are cuffed behind his back. (*Id.*, Video 4:02-04).

Viewing the body camera footage in Coates's favor, no reasonable jury would conclude that the officers lacked probable cause to arrest him for resisting a law enforcement officer. *See Rudlaff v. Gillispie*, 791 F.3d 638, 644 (6th Cir. 2015) (relying upon video footage to reverse the district court's denial of qualified immunity and conclude that the plaintiff resisted arrest); *Earnest v. Genesee Cty.*, 841 F. App'x 957, 961 (6th Cir. 2021) (affirming award of qualified immunity based upon video footage showing that the plaintiff resisted arrest).

### 3. Post-Arrest Search

Having concluded that the officers possessed sufficient probable cause to arrest Coates, the next question is whether they permissibly searched him after the arrest. The "basic rule" is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the

Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation omitted). Even where officers have probable cause to arrest someone, a subsequent search of their person must still fall within an exception to the warrant requirement. *United States v. McCraney*, 674 F.3d 614, 618 (6th Cir. 2012).

A search incident to a lawful arrest is one of these exceptions. It authorizes the warrantless search of "the arrestee's person and the area within his immediate control." *Chimel v. California*, 395 U.S. 752, 763 (1969) (internal quotation marks omitted); *see also McCraney*, 674 F.3d at 618-19. Because the officers lawfully arrested Coates for resisting a law enforcement officer, they had the authority to search his person – without first obtaining a warrant – to ensure their own safety. The officers are, therefore, entitled to summary judgment on Coates's "unreasonable search and seizure" claim.

B. *Fourth Amendment Excessive Use of Force (Count II)*

Coates contends that the officers used excessive force when they placed him in a chokehold and tackled him to the ground. (ECF No. 21, PageID.219, 224-25, 228).

"To determine whether officers' use of force in effecting an arrest is excessive and thus in violation of the Fourth Amendment, a court must determine whether the officers' actions are objectively reasonable in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation." *Brown v. Chapman*, 814 F.3d 447, 458 (6th Cir. 2016) (quotation omitted). The inquiry assesses "reasonableness at the moment" the force was used, "as judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015) (quotation omitted). Reasonableness entails balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quotation omitted).

Fourth Amendment reasonableness is a fact-specific inquiry that considers three non-exhaustive factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The focus should not be on "the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence." *Miller v. Sanilac Cty.*, 606 F.3d 240, 252 (6th Cir. 2010) (cleaned up).

As discussed above, body camera footage of the altercation depicts Coates struggling with Officers Ruiz and Llamas, both on the ground in the CVS parking lot and on the hood of Coates's car. He resisted placing his arms behind his back so neither officer could handcuff him. Only when Officers Williams and Hill arrived

12

at the scene could all four of them drag Coates to the ground, flip him onto his stomach, and handcuff him. These circumstances justify the officers' decision to immobilize Coates on the ground and place him in handcuffs. *See Carter v. Carter*, 728 F. App'x 419, 423 (6th Cir. 2018) (holding that "the officer's decision to apply three to four modest punches" to a suspect "rather than, for instance, rolling him over or pulling his arms out from under him, was not constitutionally infirm."); *Guerra v. Holt*, 429 F. Supp. 3d 407, 418 (E.D. Mich. 2019) ("When dealing with a noncooperative suspect, officers may neutralize the threat while handcuffing the suspect by pushing him over a car, into a wall, or onto the ground.").

Nonetheless, the officers are entitled to qualified immunity if it would be unclear to "a reasonable officer" that tackling Coates to the ground to place him in handcuffs "was unlawful in the situation he confronted." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004). Because there is no clearly established precedent that "law enforcement cannot tackle a non-compliant suspect and use additional force against him if he resists arrest," the officers are immunized from liability. *Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020); *Tomlin v. Percy*, No. 21-10641, 2023 U.S. Dist. LEXIS 106307, at *23-24 (E.D. Mich. Jun. 20, 2023) (observing that the district court could not locate such cases).

That leaves the chokehold allegations. (ECF No. 19-4, PageID.170-71, Tr. 37-39). Coates testified that either Officer Ruiz or Officer Llamas "had my arm and my

13

neck together, which is called like – like a guillotine . . . trying to choke me up . . ." (*Id.*, Tr. 38:14-18). He also recalled the chokehold being applied as the two officers pinned him against the hood of his car. (*Id.*, Tr. 39:1-2).

But Officer Ruiz's body camera footage appears to contradict this account. It shows the officer attempting to throw Coates to the ground using a headlock maneuver, which lasted for all of two seconds. (ECF No. 21-2, Video 2:51-53). Officers Ruiz and Llamas then pushed Coates onto the hood of his car and tried to hold his arms. (*Id.*, Video 2:58-3:13). Although the two officers' bodies partially obscure the camera angle at this juncture, neither officer appears to be choking Coates. And he retained sufficient air flow to repeatedly shout "what am I doing?" as he lay prone on the hood with the two officers on top of him. (*Id.*, Video 2:56-3:05).

Even still, assuming the officers did employ some form of chokehold, that level of force would not have been excessive under the circumstances. "Chokeholds are objectively unreasonable where an individual is already restrained or there is no danger to others." *Coley v. Lucas Cnty.*, 799 F.3d 530, 541 (6th Cir. 2015). This case presents the opposite scenario.

Coates actively resisted Officers Ruiz and Llamas as they pinned him to the hood of his car. His hands remained visible and unrestrained, presenting an immediate threat to the officers' safety. The two officers could only subdue him

14

with Officer Williams and Officer Hill's assistance. And pairing Officer Ruiz's body camera footage with Coates's testimony – that one of the officers choked him as they pinned him to the hood of his car – demonstrates that if any chokehold did in fact occur, it lasted 19 seconds at most. (ECF No. 21-2, Video 2:56-3:15). *See Williams v. Seltzner*, No. 20-957, 2024 U.S. Dist. LEXIS 6862, at *24 (W.D. Wis. Jan. 10, 2024) (noting the lack of any caselaw establishing that "briefly choking someone, in the course of . . . active resistance to an arrest, can give rise to an excessive force claim"). So no Fourth Amendment violation ultimately occurred.

At any rate, though, the officers are entitled to qualified immunity unless "it would be clear to a reasonable officer" that placing Coates in a 19-second chokehold under these circumstances is objectively unreasonable. *Champion*, 380 F.3d at 902. Because there is no clearly established precedent that applying a brief chokehold to a suspect who is actively resisting arrest violates the Fourth Amendment, the qualified immunity doctrine shields the officers from liability. *See Coley*, 799 F.3d at 541; *see also Tuuamalemalo v. Greene*, 946 F.3d 471, 477-78 (9th Cir. 2019) (holding that "the use of a chokehold on a non-resisting, restrained person violates the Fourth Amendment's prohibition on the use of excessive force."); *Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 425, 429 (10th Cir. 2014) (denying qualified immunity on an excessive force claim where the officer "used the carotid restraint for approximately two and a half minutes" and "continued to use the

15

restraint while [plaintiff] was handcuffed in a prone, face-down position on the ground."); *J.B. v. Amerson*, 519 F. App'x 613, 619-20 (11th Cir. 2013) (ruling that a corrections officer's application of "19-20 second choke hold" to a minor detainee who previously exhibited violent behavior and attempted to spit at the officer did not violate the Fourth Amendment); *Valencia v. Wiggins*, 981 F.2d 1440, 1447 (5th Cir. 1993) (concluding that the use of a "choke hold and other force . . . to subdue a non-resisting [pretrial detainee] and render him temporarily unconscious was unreasonable and was an excessive use of force").

For all these reasons, summary judgment must be awarded to the officers on the excessive force claim.

C. *Failure to Intervene (Count II)*

Coates next alleges that the officers who did not participate in the arrest physically are still liable for failing to intervene and prevent the further use of excessive force.[4] (ECF No. 1, PageID.8, ¶ 33).

Law enforcement officers may be held liable for failing to intervene during the application of excessive force when (1) the officer observes or has reason to know that excessive force will be or is being used, and (2) the officer has both the opportunity and the means to prevent the harm from occurring. *Goodwin*, 781 F.3d

---

[4] The failure-to-intervene claim in Count II appears to target Corporal David Garcia because there is no evidence that he took part in the arrest physically.

at 328. Since the Court already determined that no reasonable juror would find the officers used excessive force to subdue Coates, any non-arresting officers cannot be held liable for failing to intervene. *See Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 413 (6th Cir. 2015).

    D.    *Civil Conspiracy (Count V)*

Section 1983 civil conspiracy claims require evidence of "a single plan, where each alleged coconspirator shares in the general conspiratorial objective, and an overt act committed in furtherance of the conspiracy that causes injury to the plaintiff." *Marvaso v. Sanchez*, 971 F.3d 599, 614 (6th Cir. 2020). The plaintiff's injuries must stem from a violation of federal law when section 1983 is implicated. *Id.*

Coates posits that the officers "conspired and with concerted effort violated [his] civil rights under the Fourth and Fourteenth Amendments in using excessive force on [him] . . . and then attempting to cover up their actions by charging him with obstructing and resisting an officer." (ECF No. 1, PageID.12, ¶ 52). Since he fails to marshal any evidence that the officers violated an underlying constitutional right, the section 1983 conspiracy claim cannot withstand summary judgment. *See Crossett v. Emmet Cty.*, No. 20-1268, 2020 U.S. App. LEXIS 35657, at *17 (6th Cir. Nov. 12, 2020) (affirming the dismissal of a section 1983 conspiracy claim on

17

summary judgment because the plaintiff failed to demonstrate an underlying constitutional violation).[5]

### E. *State Law Claims for Assault and Battery (Count IV)*

Michigan's governmental immunity doctrine bars the state law assault and battery claims. Because the officers' conduct was objectively reasonable under the totality of the circumstances, "no reasonable jury would find that [they] acted in bad faith, much less that malice was a factor." *Estate of Hill v. Miracle*, 853 F.3d 306, 317 (6th Cir. 2017) (citing *Odom v. Wayne County*, 482 Mich. 459 (2008)).

### F. *State Law Claims for False Arrest and False Imprisonment (Count VI)*

The false arrest and false imprisonment claims lack merit as well. Michigan false arrest claims require proof that the defendant "participated in an illegal and unjustified arrest," without probable cause. *Walsh v. Taylor*, 263 Mich. App. 618, 626 (2004). The ultimate "guilt or innocence of the person arrested is irrelevant." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003).

---

[5] Coates refers passingly to a conspiracy to violate his "civil rights under . . . state law." (ECF No. 1, PageID.12, ¶ 53). Insofar as Coates alleges the existence of a state law civil conspiracy his claim cannot survive summary judgment because he fails to show that the officers engaged in "some underlying tortious conduct." *Urbain v. Beierling*, 301 Mich. App. 114, 132 (2013); *Advocacy Org. for Patients & Providers v Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384 (2003) (stating that "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort.").

False imprisonment is the "unlawful restraint on a person's liberty or freedom of movement." *Id.* at 17-18. "The elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Walsh*, 263 Mich. App. at 627 (quotation marks and citations omitted). As with false arrest claims, the plaintiff must show that the confinement "occurred without probable cause." *Id.*

Since the Court already determined that the officers had probable cause to stop Coates's vehicle initially, and sufficient probable cause to arrest him for resisting a law enforcement officer, he cannot proceed with the false arrest and false imprisonment claims. In any event, Michigan's governmental immunity doctrine bars these causes of action because there is no evidence that the officers "arrested or confined" Coates "with malicious intent or with a wanton or reckless disregard of [his] rights." *Thompson v. City of Detroit*, No. 361316, 2023 Mich. App. LEXIS 6803, at *23 (Mich. Ct. App. Sep. 21, 2023); *see also Odom*, 482 Mich. at 474. Accordingly,

19

IT IS ORDERED that the officers' motion for summary judgment (ECF No. 19) is granted.

**SO ORDERED.**

Dated: April 12, 2024
Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR U.S. DISTRICT JUDGE